**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| BREVARD EYE CENTER, INC., | Case No.: 6:17−bk−01828−KSJ |
| | Jointly Administered with: |
| BREVARD SURGERY CENTER, INC., | Case No.: 6:17−bk−01829− KSJ |
| MEDICAL CITY EYE CENTER, P.A., | Case No.: 6:17−bk−01830− KSJ |
| THMIH, INC., | Case No.: 6:17−bk−01831− KSJ |
| Debtors. | |
| _____/ | |

**DEBTORS' OMNIBUS RESPONSE IN OPPOSITION TO
SUMMITBRIDGE NATIONAL INVESTMENTS V LLC'S (1) RENEWED
MOTION TO DISMISS OR CONVERT CASES [ECF 403] AND (2) MOTION FOR
RECONSIDERATION OF ORDER GRANTING MOTION TO MODIFY ORDER
REGARDING PAYMENT OF PAST DUE 401K CONTRIBUTIONS [ECF 393]**

Jointly administered Debtors, BREVARD EYE CENTER, INC. ("BEC"), BREVARD SURGERY CENTER, INC. ("BSC"), MEDICAL CITY EYE CENTER, P.A. ("MCEC"), and THMIH, INC. ("THMIH") (the "Debtors"), file this Omnibus Response in opposition to SummitBridge National Investments V LLC's ("SummitBridge") *Renewed Motion to Dismiss or Convert Cases* [ECF 403] ("Renewed Motion") and *Motion for Reconsideration of Order Granting Motion to Modify Order Regarding Payment of Past Due 401k Contributions* [ECF 393] ("Motion to Reconsider," and collectively with the Renewed Motion, the "Motions") and respectfully state as follows:

**INTRODUCTION**

1. Firstly, it ought be stated without dilution, that SummitBridge's Motions are nothing less than an unabashed, brazen, and shameless effort to get a "do-over" after a full three-

day trial before Judge Colton. Almost everything alleged in these Motions were fully ventilated, argued, re-argued, considered, and thoughtfully ruled upon by Judge Colton. SummitBridge may not have liked the results, but it has no right to trifle with this Court and seek a re-hearing of each and every argument exhaustively litigated in the adjoining Courtroom.

2. SummitBridge seeks to relitigate, in front of a new judge, the very same matters that were duly considered by Judge Colton during a three-day trial that concluded just eight weeks prior to the filing of their Renewed Motion. Only nine days after the reassignment of these cases, unashamed, SummitBridge is blatantly seeking a second bite at the apple.

3. SummitBridge's Renewed Motion is comprised of the same arguments it presented in its first *Motion to Dismiss or Convert Cases* [ECF 240] (the "Motion to Dismiss") and that were considered by Judge Colton at the trial on October 20, 24, and 31, 2017 (the "Trial"). The Motion to Dismiss was denied by Judge Colton following three full days of witness testimony including several hours of testimony from SummitBridge's expert witness, Frank Musso, as well as testimony from the Debtors' current CEO, Kevin Garrity, the Debtors' former CEO, Steven Black, the Debtors' comptroller, Robyn Pastirik, and the Debtors' 100% owner and Chief Medical Officer, Dr. Rafael Trespalacios.  SummitBridge introduced over 100 exhibits into evidence. Indeed, Judge Colton referred to the documentary evidence at the Trial as "mountains of financial information and analysis introduced during this trial." *See* Audio Recording of Oral Ruling, ECF 367 at 5:22:43.

4. Substantial discovery and trial related expenses were incurred by the Debtors and SummitBridge and significant judicial resources were expended by the Court as a result of this litigation.  SummitBridge's Motion to Dismiss was denied, and this Court should not permit SummitBridge to attempt to relitigate these matters again.

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

5.      SummitBridge does not even hide the fact that it does not accept Judge Colton's ruling, nor that its goal is to have a new judge hear its already considered (and denied) arguments. *See* Renewed Motion, ¶ 1 ("The Court conducted a three-day trial on the Motion to Dismiss, which concluded on October 31, 2017. **There has been**, and continues to be, cause to dismiss or convert these cases") (emphasis added). They simply refuse to accept that, just two months ago, Judge Colton ruled that dismissal or conversion of these cases was **not** warranted.

6.      In the same vein, SummitBridge would like reconsideration of Judge Colton's decision to allow the Debtors three additional weeks to retire the 401k contribution arrearage, notwithstanding that Judge Colton had already considered SummitBridge's filed response in opposition (and that the short extension of time was merited). And they pay no heed to the fact the the 401k arrearage has been paid.

7.      In addition to rehashing old factual and legal arguments,[1] SummitBridge asserts only a few new arguments in its Motions – including the spurious claim that the Debtors actually did not pay off their payroll tax arrearage as required by this Court's orders – but such assertions are disingenuous, immaterial, and possibly deliberately false.

8.      Once again, as it has done throughout these cases, SummitBridge seeks to multiply these proceedings, impose its will on the Debtors, and paper the Debtors into submission.[2] But notwithstanding SummitBridge's desire to control the Debtors and these cases, the Debtors will not simply close their four optometry centers and their surgical center, lay off

---

[1] Other than a few minor changes, the legal argument in Paragraphs 23 – 29 of the Renewed Motion are nearly identical to Paragraphs 11-14 and 16-18 of the First Motion to Dismiss.

[2] As an example of SummitBridge's overbearing and litigious conduct in this case, it has required extensive extra weekly reporting from the Debtors. After SummitBridge complained at Trial about certain reporting sometimes being late, Judge Colton noted: "SummitBridge maintains the Debtors late financial information constitutes a material breach of the cash collateral order. I do not agree. SummitBridge has demanded a tremendous amount of information in this case, perhaps more than is warranted for cases of this size. In any event, I have previously observed that the reports have always been a little late but the extent and quality of the information has been pretty impressive. There is no suggestion of any illegal activities or any fraud or that anything was improper or secretive or hidden." *See* Audio Recording of Oral Ruling, ECF 367 at 5:19:30.

nearly 60 employees, and harm their other creditors so that SummitBridge can liquidate its purported collateral.

9. The Debtors have filed a Plan of Reorganization (*see* ECF 343)[3] and intend to exit this bankruptcy proceeding as an operating, viable entity. As Judge Colton commented in her oral ruling at the end of the Trial: "Can a plan be confirmed within a reasonable time? I think it's reasonably likely. It's definitely not certain, but reasonably likely. A plan can trim the Debtors' fat, jettison unprofitable locations, and address the long term secured and unsecured debt weighing down these companies." *See* Audio Recording of Oral Ruling, ECF 367 at 5:28:30.

## BRIEF BACKGROUND OF THESE CASES

10. This Chapter 11 bankruptcy proceeding was commenced on March 21, 2017 (the "Petition Date") with the filing of four voluntary Chapter 11 petitions. *See* ECF No. 1 in Case Numbers: 6:17-01828-KSJ (BEC); 6:17-01829-KSJ (BSC); 6:17-01830-KSJ (MCEC); and 6:17-01831-KSJ (THMIH). On March 24, 2017, the Court entered an Order authorizing the joint administration of the Debtors' cases. *See* Case Number 6:17-01828-KSJ, ECF 22 (BEC – Lead Case); Case Number 6:17-01829-KSJ, ECF 20 (BSC); Case Number 6:17-01830-KSJ, ECF 20 (MCEC); and Case Number 6:17-01831-KSJ, ECF 16 (THMIH).

11. The Brevard Eye cases concern an ophthalmological surgery center and four separate optometry stores. All are owned by Dr. Rafael Trespalacios, a board certified highly skilled and well reputed ophthalmologic surgeon. Dr. Trespalacios is a corneal refractory specialist and handles the majority of corneal surgical procedures in Brevard County. He also handles emergency eye surgery on occasion at local hospitals.

---

[3] Consideration of the Debtors' Plan of Reorganization has been abated pending a Status Conference which has been rescheduled by this Court to January 17, 2018. *See* Order Denying First Motion, ECF 373.

12. There is an economic synergy to the Debtors' operations. Much of Dr. Trespalacios' surgical patients are referred by the optometrists who practice out of the four optometry stores. The optometry stores diagnose patients and prescribe and sell contact lenses and eyeglasses. Dr. Trespalacios periodically treats and diagnoses patients at the stores who require advanced care.

13. Dr. Trespalacios purchased these practices from two doctors over the last few years, Dr. Befanis and Dr. Yager. Although Dr. Trespalacios' reputation as an accomplished surgeon precedes him, his acumen as a businessman may have left something to be desired. Dr. Trespalacios vastly overpaid for the practices. And to compound the problem, he also purchased most of the related real estate and financed everything through Bank of America.

14. All in all, there were about 12 loan transactions that relate to this case. The loans total about $11.0 million dollars and, with interest are today probably more than $12.0 million face value.

15. The loan documents clearly offend *TOUSA* sensibilities. The loans were made to Dr. Trespalacios but were guaranteed by the operating entities. But the operating entities not only guaranteed Dr. Trespalacios' debt, they secured their guarantees with all of their assets, which are comprised basically of accounts receivable.

16. When it became clear that Dr. Trespalacios and the entities were unable to repay the loans, and when it became clear that the only legitimate collateral were the mortgages on the real estate which are worth about $4.0 million, the undersigned firm negotiated a settlement with Bank of America for about $5.5 million dollars.

17. The testimony at Trial on the Motion to Dismiss (over the objection of SummitBridge) was that SummitBridge had approached the Debtors' then CEO, Steven Black,

5

about its interest in buying the loan at a discount, and passing on a significant portion of the discount (reducing the loan to $7.0 million) to the Debtors. The Debtors agreed. SummitBridge bought the loan at about $5.5 million. But, alas, they did not discount the loan for the benefit of the Debtors. Judge Colton commented in her oral ruling at the end of the Trial that Steven Black was perhaps "naïve" in his dealings with SummitBridge.

18. SummitBridge is essentially a hedge fund that specializes in "distressed debt acquisitions" and "bridge lending" (ergo the name "SummitBridge"). While their methodology may be unclear from their website, their actions were quite clear in this case. SummitBridge purchased the Bank of America loans from Dr. Trespalacios and the corporate landowner for about $5.5 million, and then demanded guarantor deposit and control accounts ("DACAs") without adequate consideration (the Debtors' operating accounts). SummitBridge then redirected the operating accounts to themselves, amounting to $266,500.00 three days before payroll. The seizure prompted this Chapter 11 filing.

19. On May 24, 2017, the Debtors filed their *Complaint to Set Aside Transfers and for Injunctive and Other Relief Pursuant to 11 U.S.C. §§ 105, 502, 506, 542, 544 and 547* [Adv. Pro. No. 6:17-ap-00070-KSJ, ECF 1] ("Complaint") seeking, *inter alia*, to set aside as fraudulent all of the guarantor liens, including the DACAs, and for SummitBridge to return the funds. That action (the "Adversary Proceeding") remains pending before this Court.

20. Also, on October 19, 2017, the Debtors filed their initial Plan of Reorganization.

21. During the course of this case, Dr. Trespalacios replaced Steven Black, the CEO, with Kevin Garrity. For reasons unclear, and in addition to the "understanding" that he had with SummitBridge, under Mr. Black's stewardship the Debtor was not paying certain payroll taxes and not contributing to existing 401k plans. Once discovered, Dr. Trespalacios replaced Mr.

6

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

Black with Kevin Garrity. Under Mr. Garrity's tutelage, the economics of the Debtor businesses have undergone significant change. A non-performing location was rejected, bloated optometrist agreements have been rejected, and payroll has been reduced by about $1.0 million dollars a year.

22. On August 17, 2017, SummitBridge filed its Motion to Dismiss. After the three-day Trial, Judge Colton denied the Motion to Dismiss and: (a) required the Debtors to cure the payroll tax arrearage and the 401k contribution arrearage; and (b) continued all matters related to the Adversary Proceeding and prosecution of the Plan of Reorganization to January 16, 2018 (continued to January 17, 2018, by the Court). Notwithstanding the incessant whining and repeated arguments already ruled upon by Judge Colton, the Debtors have cured the payroll tax and 401k arrearages. And they have done this while Medicare has *still* not rectified approximately $170,000 in payments that it has sent to the wrong Debtor bank account.

## ARGUMENT

23. On November 14, 2017, following three days of trial on SummitBridge's First Motion to Dismiss, this Court entered the *Order Denying, Without Prejudice, SummitBridge National Investments V LLC's Emergency Motion to Dismiss or Convert, Continuing Use of Cash Collateral Through January 16, 2018, Abating Debtors' Pending Adversary Proceeding and Consideration of Plan of Reorganization, and Scheduling Status Conference* [ECF 373] (the "Order Denying First Motion"). The Order Denying First Motion provided, *inter alia*, that the First Motion to Dismiss was denied without prejudice and that the Debtors were required to pay all post-petition payroll tax and 401k contribution arrearages by December 8, 2017.

24. On December 7, 2017, the Debtors' filed their *Notice of Partial Compliance with Order Regarding Payment of Past Due Payroll Taxes and Past Due 401k Contributions* [ECF

7

382] indicating that the payroll tax arrearage had been paid off. The Debtors also filed their *Motion to Modify Order Regarding Payment of Past Due 401k Contributions* [ECF 383] ("Motion to Modify") requesting an extension through December 31, 2017 to pay off the 401k contribution arrearage.

25. On December 8, 2017, SummitBridge filed a response in opposition to the Motion to Modify (*see* ECF 385), and on December 11, 2017, the Court entered its *Order Granting Motion to Modify Order Regarding Payment of Past Due 401k Contributions* [ECF 387] ("Order Granting Motion to Modify"), allowing the Debtors through December 31, 2017 to pay off the 401k arrearage.

26. On December 29, 2017, the Debtors filed their *Notice of Compliance with Order Regarding Payment of Past Due 401k Contributions* [ECF 405] indicating that the 401k contribution arrearage had been paid off.

27. In the Motions, SummitBridge disingenuously and quite ridiculously attempts to argue that the Debtors did not pay off the payroll tax arrearage by the December 8, 2017 deadline. However, as the Debtors informed SummitBridge **prior** to the filing of the Motions, the payment for the entire payroll tax arrearage balance was made by the Debtors before the deadline. Apparently, the IRS did not actually deduct some of the funds from the Debtors' bank accounts until Monday, December 11, but that does not change the fact that the entire balance was paid by the Debtors on December 7, in advance of the December 8 deadline. The differences between accrual and cash accounting methods can explain any discrepancy in the weekly reporting. The weekly reporting of the Debtors' ending cash balance pursuant to accrual accounting methods reflects the immediate reduction of cash following the payment on December 7, while the other line-item balances in the weekly reporting operate under cash

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

accounting methods and would not reflect any change until the cash is actually deducted from the Debtors' bank account. SummitBridge, incredibly, is actually asking this Court to second guess Judge Colton and dismiss these cases because the IRS removed taxes from the Debtor's account on a Monday, after the Debtor ordered the payment on Friday. Had the Debtors mailed a physical check and the IRS not cashed it for a week, would SummitBridge also argue that the payment had not been made? Is the Debtor responsible for IRS delay in removing funds from the Debtor account by one business day? The most pertinent question here really is: Why is SummitBridge wasting the Debtors' resources and time, and the Court's time, with utter nonsense?

28. Additionally, the entire 401k contribution arrearage was paid on December 29, in advance of the December 31 deadline.

29. SummitBridge makes much ado about the timing of the Debtors' payroll tax arrearage payment, but its protestations are intentionally misleading and overblown. Indeed, SummitBridge is the party who demanded detailed weekly reporting in this case notwithstanding its limited utility. The bottom line - all court-ordered arrearages have been paid, and were paid in advance of the court-ordered deadlines.

30. Early on in this case, the Debtors fell behind on the payment of payroll taxes and 401k contributions as a result of SummitBridge's unauthorized seizure of over $266,000 of the Debtors' funds immediately prior to the filing of the Debtors' petitions[4] and the poor collection

---

[4] As is fully detailed in the Debtors' Complaint and the pending *Motion for Partial Summary Judgment Regarding Avoidance and Recovery of Transfers* [Adv. Pro. No. 6:17-ap-00070-KSJ, ECF 14] ("Motion for Summary Judgment"), SummitBridge forced the Debtors into bankruptcy through its unauthorized seizure of all of the Debtors' operating funds totaling in excess of $266,000 pursuant to a Deposit Account Control Agreement ("DACA") that was granted to SummitBridge in exchange for zero consideration.

SummitBridge intentionally misleads this Court in its Motion to Reconsider when it states that, at an initial hearing in this case, "the Debtors could not provide the Court with any legal basis for their request for turnover of the DACA funds, and with no evidence to support the request at the following evidentiary hearing on April 12, 2017, the Debtors withdrew the request." Motion to Reconsider, p. 5. This assertion is false and clearly is an attempt

9

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

of receivables under a prior CEO and through a now-terminated outside collector which wholly failed to perform. The Debtors fell further behind on payables following the closure of its stores before, during, and after Hurricane Irma. The payroll tax arrearage had reached as much as $363,651 and the 401k contribution arrearage reached $71,191. All of these facts and more were the subject of extensive and detailed testimonial and documentary evidence at the Trial. None of it provided a sufficient basis for dismissal or conversion of these cases. Indeed, Judge Colton found that both the seizure of the Debtors' cash by SummitBridge and the Debtors' store closures following Hurricane Irma were "unusual circumstances" under 11 U.S.C. § 1112(b)(2) sufficient to deny the First Motion to Dismiss.

31.     The fact that the Debtors have been able to rebound from the significant obstacles they faced and have paid off the arrearages in a short amount of time, while now also dealing with significant Medicare payment issues (substantial funds sent by Medicare to the wrong bank account as set forth in the Debtors' *Emergency Motion to Compel First Coast Service Options, Inc., as Administrator for Medicare, to Transfer Medicare Payments to the Debtors' New Bank Accounts at Regions Bank* [ECF 401]), is truly <u>remarkable</u>, and reflects the viability of these Debtors.

32.     SummitBridge also argues (again, as they have argued in the past, and as has already been considered by Judge Colton) that the Debtors' cases should be dismissed or converted because the Debtors should not have paid Dr. Trespalacios a salary during the

---

by SummitBridge to reframe this entire case in front of a new judge. Quite the contrary to SummitBridge's assertion, rather than seek return of the improperly seized funds from SummitBridge in connection with cash collateral proceedings in the main case, the Debtors filed their 8-count complaint against SummitBridge which sought not only the return of the seized DACA funds under at least three distinct legal theories, but also to avoid and recover the transfers of liens in the Debtors' assets to SummitBridge under a *TOUSA* analysis.

The Adversary Proceeding has been abated pending a Status Conference which has been rescheduled to January 17, 2018. *See* Order Denying First Motion, ECF 373. The Debtors are eager to move forward with the Adversary Proceeding and have their Motion for Summary Judgment considered, and the majority of SummitBridge's purported liens avoided.

pendency of this case (which salary hasn't been paid since August), that the Debtors' former CEO mismanaged the Debtors, and that Debtors BEC, BSC, and MCEC should pay rent to Debtor THMIH, which owns the real estate upon which the other Debtors operate.

33. The Court should note that **all** of these arguments were made by SummitBridge and considered by Judge Colton at the Trial two months ago, and indeed most were discussed by Judge Colton at length in her oral ruling. Notwithstanding, Judge Colton denied the First Motion to Dismiss. None of this is new information. The Debtors adequately addressed all of these arguments, including explaining the "hole" in which the Debtors began this case as a result of SummitBridge's unauthorized seizure of over $266,000 of the Debtors' funds immediately prior to the filing of the petitions, explaining the qualifications and strategy of the Debtors' new CEO, and explaining how Debtors BEC, BSC, and MCEC pay the expenses including the real estate taxes, insurance, and maintenance of THMIH and that in any event, all Debtors are owned 100% by Dr. Rafael Trespalacios.

34. SummitBridge further states that it received a notice of the cancellation of insurance but, again, as the Debtors informed SummitBridge **prior** to the filing of their Motions, all insurance is current. The Debtors even provided SummitBridge with copies of all of the certificates of insurance within a day of their request, yet SummitBridge still chose to <u>falsely represent</u> that insurance has been cancelled in their Motions. There has not been a lapse in coverage.

35. SummitBridge complains several times that the Debtors were not on target with various line-items in the weekly budget projections (which weekly reporting was required by SummitBridge), but as the Debtors' CEO testified at the Trial, weekly projections are not a useful metric in these cases as there are wide variances week-to-week in income and expenses. In

Judge Colton's oral ruling after the Trial, she agreed: "I agree with Mr. Garrity that the weekly projections and cash performance reports are a bit misleading and not real helpful in this regard. They do need to be reconciled on a monthly or quarterly basis to make good sense." *See* Audio Recording of Oral Ruling, ECF 367 at 5:26:55.

36. SummitBridge's concerns about the Debtors' accounts payable are also unfounded. First, the Debtors' current accounts payable balance has been reduced since the $425,433 figure cited in SummitBridge's papers. Second, the Debtors are operating on a cash-on-delivery basis with nearly all major vendors, meaning they are not incurring substantial additional trade payables on a going-forward basis.

37. With respect to the payment and escrowing of post-petition real estate taxes, such taxes are not due until March 31, 2018. The Debtors fully expect to replenish the tax escrow account on or before February 28, 2018, about a month in advance of the deadline to pay the real estate taxes, and concerns about the Debtors' ability to pay real estate taxes in the future does not justify the reconsideration of an order allowing three additional weeks to pay a 401k arrearage. In this regard, the Debtors' filed the *Motion to Modify Cash Collateral Orders Regarding Escrow of Post-Petition Real Estate Taxes* [ECF 390], which is set for hearing on January 17, 2018.

38. The Debtors have now reduced excess payroll by over $1 million/year, significantly reduced other expenses, and have consolidated operations in an effort to be more profitable and productive. Notwithstanding SummitBridge's continued and incessant dire predictions at the Trial that the Debtors could not survive or pay down their payroll tax arrearages, that they would be out of business by December 31, 2017, the Debtors have now paid down **all** arrearages, have substantially reduced payroll, remain in business, are fully operational,

12

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

and have recently had several months of operating profits. Receivables for the Debtors have always been solid,[5] and the Debtors are correcting all collections issues. Notwithstanding SummitBridge's continuing predictions of doom, the residents of Brevard County continue to need expert eye care and eye surgeries.

39. Finally, to the extent this Court ultimately determines in the Adversary Proceeding that SummitBridge's seizure of more than $266,000 immediately before the filing of the Debtors' bankruptcy cases and a few days before payroll was due, resulted from two Deposit Account Control Agreements granted for less than adequate consideration, the return of said funds to the Debtors would provide an additional cushion in connection with going-forward operations in this case.

## CONCLUSION

40. SummitBridge's Motions simply rehash old arguments that did not carry the day at the Trial that concluded only two months prior, and that Judge Colton already considered before entering the Order Granting Motion to Modify. The Renewed Motion has no new law and scant new facts, and the Motion to Reconsider is similarly duplicative. The only real difference is that there is now a new judge administering these cases, and SummitBridge's reprehensible effort to relitigate these matters, to ignore Judge Colton's rulings after a three-day trial, should not be countenanced by this Court.

41. The Debtors have complied with the Court's orders and paid down substantial payroll tax and 401k contribution arrearages by Court-ordered deadlines, notwithstanding the significant hurdles the Debtors have faced both during and immediately before the filing of these cases including the seizure of the Debtors' cash by SummitBridge, the closures following

---

[5] Judge Colton stated in her oral ruling at the end of Trial that "the evidence suggests that the receivables are generally good, albeit deeply discounted [as a result of standard collection rates on Medicare and Medicaid receivables]." *See* Audio Recording of Oral Ruling, ECF 367 at 5:26:28.

13

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

Hurricane Irma, the issues collecting receivables, and the current issues having Medicare funds redirected to the proper bank accounts. With all of these challenges, which were largely out of the Debtors' control, the Debtors remain operational and viable and indeed, have operated at a net profit of late. Now, so soon after a Trial on SummitBridge's First Motion to Dismiss, and following the repayment of all arrearages pursuant to Court order, is not the time to dismiss or convert these cases.

42. Accordingly, the Renewed Motion and the Motion to Reconsider should be denied and this Court should allow consideration of the Debtors' Plan of Reorganization and Adversary Proceeding. SummitBridge should not be able to leverage the takeover of these companies yet.

WHEREFORE, for the reasons set forth herein, the jointly administered Debtors, BREVARD EYE CENTER, INC., BREVARD SURGERY CENTER, INC., MEDICAL CITY EYE CENTER, P.A., and THMIH, INC., respectfully requests an Order from the Court denying the Renewed Motion and the Motion to Reconsider, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Aaronson Schantz Beiley P.A.**

/s/ Geoffrey S. Aaronson
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
gaaronson@aspalaw.com
Samuel J. Capuano, Esq.
Florida Bar No. 90946
scapuano@aspalaw.com
Miami Tower
100 SE 2nd Street, Suite 2700
Miami, Florida 33131
Ph: 786.594.3000  Fax: 305.424.9336
*Attorneys for Debtors*

14

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished through the Court's CM/ECF system on January 15, 2018 via email to all CM/ECF electronic notice parties as set forth on the electronic mail notice list below.

**Electronic Mail Notice List**

- **Geoffrey S Aaronson** gaaronson@aspalaw.com
- **Steven M Berman** sberman@slk-law.com
- **Samuel J Capuano** scapuano@aspalaw.com
- **Ryan E Davis** rdavis@whww.com, thiggens@whww.com; thiggens@ecf.courtdrive.com
- **Kevin C Gleason** KGPAECMF@AOL.COM
- **Alan C Hochheiser** ahochheiser@mauricewutscher.com
- **Phillip M Hudson** pmhudson@arnstein.com, hpiloto@arnstein.com; cofalla@arnstein.com; mslopez@arnstein.com; ccontreras-martinez@arnstein.com; amclaughlin@arnstein.com
- **Brett A Hyde** brett@uslegalteam.com
- **Jill E Kelso** jill.kelso@usdoj.gov
- **Richard J McIntyre** rich@mcintyrefirm.com, nichola@mcintyrefirm.com; sandy@mcintyrefirm.com; blake@mcintyrefirm.com
- **Tamara D McKeown** tmckeown@aspalaw.com
- **Kevin H Morse** khmorse@arnstein.com
- **Harley E Riedel** hriedel.ecf@srbp.com, srbpecf@srbp.com
- **Richard A Robinson** rrobinson@burr.com, debankruptcy@burr.com
- **Lawrence M Schantz** lschantz@aspalaw.com
- **James E Shepherd** shepherd@fbl-law.com, service@fbl-law.com
- **Jonathan Sykes** jsykes@burr.com, ccrumrine@burr.com; lloving@burr.com
- **United States Trustee - ORL** USTP.Region21.OR.ECF@usdoj.gov

                                        /s/ Geoffrey S. Aaronson
                                        Geoffrey S. Aaronson, Esq.

AARONSON SCHANTZ BEILEY P.A. | MIAMI TOWER | 100 SE 2ND STREET, 27TH FLOOR | MIAMI, FLORIDA 33131 | PH 786.594.3000 | FAX 305.424.9336